## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **BIGLER JOBE STOUFFER,** | ) | |
| | ) | **Case No. 21-CV-1000-F** |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **SCOTT CROW, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## CAPITAL CASE
## PENDING EXECUTION DATE:
## DECEMBER 9, 2021

## [REDACTED] PLAINTIFF BIGLER JOBE'S STOUFFER'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT

## <u>TABLE OF CONTENTS</u>                        PAGE

**STATEMENT OF UNDISPUTED MATERIAL FACTS
IN SUPPORT OF BIGLER JOBE STOUFFER'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**                       **2**


**ARGUMENT**                                                **20**

**I.     SUMMARY JUDGMENT STANDARD**                        **20**

**II.    STOUFFER IS ENTITLED TO PARTIAL SUMMARY
        JUDGMENT ON COUNT II OF HIS AMENDED
        COMPLAINT – EIGHTH AMENDMENT VIOLATION
        – CRUEL AND UNUSUAL PUNISHMENT.**                  **21**


**III    STOUFFER IS ENTITILED TO SUMMARY
        JUDGMENT ON COUNT III OF HIS AMENDED COMPLAINT –
        PROMISSORY ESTOPPEL / DETRIMENTAL RELIANCE.**       **24**

**IV.    REQUEST FOR EXPEDITED CONSIDERATION AND RELIEF.**   26

<h1 style="text-align: center;"><u>TABLE OF AUTHORITIES</u></h1>

PAGE

**Court Rules**

Fed. R. Civ. P. 56    20

LCV-R56.1    21

**Cases**

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970)    21

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)    21

*First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, (1968)    21

*G.E. Capital Information Tech. Solutions, Inc.*
*v. Oklahoma City Public Schools*, 173 P.3d 114 (OK. App. 2007)    25

*Gibson v. Arnold*, 288 F.3d 1242, 1246-1246 (10th Cir. 2002).    26

*Manokoune v. State Farm Mut. Auto Ins. Co.*, 145 P.3d 1081 (OK 2006)    25

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 5747 (1986)    21

Oil Capital Racing Association v. Tulsa Speedway, Inc.,
628 P.2d 1176 (OK CIV APP 1981)    26

*Russell v. Board of County Commissioners*, 952 P.2d 492, 503 (OK 1997)    24

*Tolan v. Cotton*, 572 U.S. 650 (2014)    21

**Misc.**

Restatement (Second) of Contracts § 90    24

.

**STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF BIGLER JOBE STOUFFER'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Bigler Jobe Stouffer ("Stouffer") submits the following statement of undisputed material facts in support of his Motion for Partial Summary Judgment, as required by Federal Rules of Civil Procedure, Rule 56(a) and 56(c), and Local Rule LCvR56.1.

1.     Stouffer resides on death row in Oklahoma and, unless relief is afforded him, will be executed by the State of Oklahoma on December 9, 2021.  That execution, if allowed to proceed, will be pursuant to the existing Oklahoma Lethal Injection Protocol (hereinafter "Protocol") Stouffer contends is unconstitutional. (Stouffer Aff., ¶ 1; Laird Decl., ¶ 2.)

2.     Stouffer was on death row in Oklahoma when preliminary work was being performed by a group of attorneys to draft and file an action which, among other things, would challenge the constitutionality of the Protocol.  That work resulted in a Complaint being filed on June 25, 2014, styled *Glossip v. Chandler* (Civ. No. 14-cv-665-F, U.S. District Court, W.D. Oklahoma) ("*Glossip*"). (For simplicity, the *Glossip* defendants will hereinafter be collectively referred to as "the State", the named plaintiffs in *Glossip* will be referred to as "the *Glossip* plaintiffs" and the legal team representing the *Glossip* plaintiffs will be referred to as the "*Glossip* lawyers"). (Stouffer Aff., ¶¶ 1 and 3; Laird Decl., ¶ 3.)

3.      Although Stouffer expressed interest in being a plaintiff in the proposed

*Glossip* action, he was not included as a *Glossip* plaintiff when the original Complaint

was filed.  Although the reasons why he was not included are unclear, it appears Stouffer

may not have exhausted his appeals at the time the Glossip case was originally filed.  It is

believed that of the more than 30 condemned prisoners in Oklahoma at the time *Glossip*

was filed, Stouffer was the only one not included as a plaintiff. (Laird Decl., ¶ 4; Stouffer

Aff., ¶ 3.)

4.      After Stouffer's appeals were exhausted, and at all times since, Stouffer has

occupied a status identical to the *Glossip* plaintiffs; namely, he was a condemned prisoner

awaiting execution contending that the Protocol was unconstitutional. (Stouffer Affidavit,

¶ 1.)

5.      Five months after *Glossip* was filed, Stouffer filed a pro se "Motion for

Additional Plaintiff" in *Glossip* on November 20, 2014 (Laird Decl., Ex. 1; Stouffer Aff.,

¶ 4.)

6.      On December 11, 2014, the State opposed Stouffer's Motion arguing,

among other things, that "[t]his case has been proceeding since June [2014], and

significant discovery and preparation has already been done, as this Court is well aware,

Mr. Stouffer's attempt to enter the case now, as far as it has progressed this far, should

not be allowed. Mr. Stouffer's entrance would likely trigger more discovery, further

pleadings, and would likely burden this Court over and above the normal pressures

involved in this case"; the State also argued that Stouffers position as a pro se party, if

included in *Glossip*, would further complicate the *Glossip* case ("[t]his issue would be

further complicated by the fact that Mr. Stouffer is not represented and instead is proceeding pro se. This adds another wrinkle to a case that is already very complex.") (Laird Decl., Ex. 2; Stouffer Decl., ¶ 5.)

7.      On December 19, 2014, Stouffer filed a Reply to the objections filed by the State on December 11, 2014, explaining that he had held off on trying to join *Glossip* because his attorney advised hm not to do so until ongoing habeas proceedings on his behalf were completed. (Laird Decl., Ex. 3; Stouffer Decl., ¶ 6.)

8.      On December 22, 2014, the Court denied Stouffer's motion (Laird Decl., Ex. 4; Stouffer Aff, ¶ 7.) In so doing, and while agreeing with the State in part on procedural grounds, the Court noted that Stouffer could not show any harm by virtue of being included as a *Glossip* plaintiff.  Specifically, the Order included the following:

> Mr. Stouffer states no grounds for relief which indicate that he must be a named plaintiff in this action in order to receive the benefit of any ruling which might arguably benefit the named plaintiffs, whether at this or a later stage. Mr. Stouffer identifies no exigencies which pertain to his personal situation and which might suggest the need to allow him to intervene.

*Id.*

9.      After reviewing the December 22, 2014 Order, and the language quoted above, Stouffer reasonably believed that even if he was not a *Glossip* plaintiff, he would "receive the benefit of any ruling which might arguably benefit the named plaintiffs, whether at this or a later stage".  In particular, Stouffer concluded that his contentions that the Protocol violated his constitutional rights would be considered and decided in *Glossip* and that he need not join the *Glossip* case as a plaintiff or to take any other

affirmative steps to secure for himself any benefits that might afforded the *Glossip* plaintiffs. (Stouffer Affidavit, ¶¶ 8-9.)

10.    Based on his understanding, described above, and since the December 22, 2014 Order was entered, Stouffer has diligently reviewed materials filed in *Glossip*, and also routinely discussed the action with *Glossip* plaintiffs, knowing that developments in the *Glossip* case would affect him directly. (Stouffer Aff., ¶ 10.)

11.    Ten months later, on October 16, 2015, the parties in *Glossip* presented a "Joint Stipulation" (Laird Decl., Exs. 5-6; Stouffer Aff., ¶¶ 11-12.) The Joint Stipulation provided that the *Glossip* action would be administratively closed for an indefinite period of time, pending completion of investigations and other measures pertaining to Oklahoma's execution procedures. *Id.*

12.    Included in the Joint Stipulation was the following:  "It would be in the interests of judicial economy and comity for the Oklahoma Attorney General not to **seek an execution date from the Oklahoma Court of Criminal Appeals for any of the Plaintiffs or any other condemned prisoners** until after counsel for Plaintiffs are provided the following. …".  (Emphasis added) The Court entered an Order approving the Joint Stipulation, including the language set forth above, on the day it was submitted, October 16, 2015 (Laird Decl., Exs. 5-6; Stouffer Aff., ¶¶ 11-12.)

13.    The Joint Stipulation and Order, as well as the subsequent commitment made by the State in March, 2020 (described below), were intended to serve the same purpose; namely, to allow  the constitutional claims that the Protocol was unconstitutional to proceed in an orderly way, based on a full record and at a trial (if there

were contested issues of fact making requiring that a trial be convened) rather than forcing the parties and the Court to litigate the claims on the expedited basis if executions under the contested Protocol were allowed to proceed. *Id.*

14.     Fifteen months after the Joint Stipulation and Order were entered, on March 6, 2017, the State, through its Assistant Attorney General, filed a notice in the case of *Bigler Jobe Stouffer v. State of Oklahoma* in the Oklahoma Court of Criminal Appeals (Case No. D-2003-277) described as a "Notice Pursuant to 22 O.S. 2011, § 1001.1, Regarding Execution Date" referencing the Joint Stipulation ("March 2017 Notice"). (Laird Decl., Ex. 7; Stouffer Aff., ¶¶ 14-15.)

15.     In the "March 6, 2017, Notice" entered in a case wherein Stouffer was the only plaintiff, the State recited its obligations under the Joint Stipulation and Order, representing that while the investigations contemplated in the Joint Stipulation had been completed, other requirements set forth in the Stipulation and Order had not yet been completed. As such, the State affirmatively claimed in the March 3, 2017 Notice that "the setting of Stouffer's execution date by this Court is not appropriate at this time." *Id.*

16.     As had been the case with the December 22, 2014 Order and the October 16, 2017 Joint Stipulation and Order, Stouffer reasonably relied on the State's representations in the "March 6, 2017 Notice"; specifically that an execution date for him would not be set prior to the time his objections to the Protocol had be considered and decided and, of course, in the event the protocol was found to be unconstitutional, the State would not be allowed to execute Stouffer pursuant to the Protocol. *Id.*

17.     Nearly three years later, on or about February 13, 2020, the State contended that it had met all requirements necessary to trigger the 150-day period to resume executions pursuant to the Joint Stipulation and Order, which meant that on or about July 12, 2020, the State would for the first time since the entry of the Joint Stipulation and Order be authorized, and in fact required by law, to request execution dates for all condemned prisoners including the *Glossip* Plaintiffs and Stouffer. (See August 31, 2021, Reply to Appellant's Objection to Setting of Execution Date, filed by the State in *Stouffer v. State*, Case No. D-2003-277, pp. 1-2 and n. 2.) (Laird Decl., Ex. 13.)

18.     One month later, during an unreported status conference in *Glossip* on March 11, 2020, and to serve the same purpose as the Stipulation and Order, the Court requested that the State agree it would not seek execution dates until the *Glossip* case was completed.  The Attorney General for the State personally attended the March 11, 2020, status conference, and to the relief of the Court at that time, assured the Court it did, in fact, agree not to seek execution dates until the completion of *Glossip*.  (Laird Decl., Ex. 8 (October 25, 2021, transcript, at 140:10-141:10).)

19.     On May 5, 2020, a hearing was held in *Glossip* (Laird Decl., Ex. 9.) During that hearing, which addressed the Joint Stipulation and whether the State had complied with the requirements necessary to trigger the 150-day period, the following exchange occurred between *Glossip*'s counsel, the Court, and the State's counsel:

> MR. COHEN: Yes, Your Honor. If I might, I just wanted to -- and I appreciate the fact that the formal motion to enforce the prior order has been denied.

I would like to address **and perhaps by agreement get some confirmation that the State will not seek execution dates until after this case has been completed**. I think that makes sense. I think it's fair. I think it's reasonable. And I just wanted to throw it out there as --

THE COURT: Well, I'm not even going to invite the defendants to respond to that because **I had the representation last March from none other than the Attorney General of Oklahoma that that would not happen**. **And if we should have any indication that that will happen, I will be, to put it mildly, immediately available, so it's not necessary to address that.**

MR. COHEN: Thank you, Your Honor.

THE COURT: Anything further this afternoon from the defendants?

MR. CLEVELAND: No, Your Honor.

THE COURT: Very well. Court will be in recess. (*Id.* at 31:12-25)

(emphasis added)

20.     Stouffer became aware of the May 5, 2020, hearing, and in particular the agreement described by the Court during that hearing, shortly after May 5, 2020.  In particular, and given the inclusive language used at the May 5, 2020, hearing that the State would "not seek execution dates" until the *Glossip* case was completed, Stouffer reasonably believed that the State had promised not to set an execution date for him until *Glossip* had been concluded, or that he would receive the benefit of the promise made by the State. (Stouffer Aff., ¶ 14.)

21.     At the time of the May 5, 2020, hearing, and after the Court described the agreement reached on March 11, 2020, the State did not dispute that the agreement described by the Court existed or that it was unenforceable, nor did the State clarify that the agreement applied to all condemned prisoners in Oklahoma <u>but did not apply to</u>

Stouffer.   As noted by the May 5, 2020 transcript, when asked whether there anything

further from the State, counsel said "no". (Laird Decl., Ex. 9.)

22.     Not long thereafter, on or about July 12, 2020, the 150-day tolling period

under the Joint Stipulation would have expired, but the State did not request an execution

date for Stouffer, notwithstanding a legal obligation to do so. (Laird Decl., ¶ 14.)

23.     Over a year later, and after the parties had prepared and submitted an

extensive record on the matter, the Court entered an Order on a Motion for Summary

Judgment filed by the *Glossip* defendants (Summary Judgment Order (Laird Decl., Ex.

10.)  In so doing, the Court specifically identified the material filed as part of the

Summary Judgment proceeding and which it had carefully reviewed in reaching its

decision:

| Date filed | Doc. No. | Filed by | Name of Document |
|---|---|---|---|
| 2-19-21 | 388 | Defendants | Defendants' Motion for Summary Judgment and Brief in Support |
| 3-19-21 | 392 | Plaintiffs | Opposition of plaintiffs (other than Wade Lay) to Defendants' Summary Judgment Motion (stricken,1 along with doc. nos. 393 and 394) |
| 3-26-21 | 397 | Defendants | Reply in Support of Defendants' Motion for<br>a.  Summary Judgment (superseded by doc. no. 433) |
| 5-7-21 | 422 | Defendants | Defendants' Supplemental Brief in Support of Their Motion for Summary Judgment |

| 5-14-21 | 425 | Plaintiffs | Opposition of Plaintiffs (other than Wade Lay) to Defendants' Summary Judgment Motion |
| 5-27-21 | 433 | Defendants | Reply in Support of Defendants' Motion for Summary Judgment |

24.     The Court's August 11, 2021, Order included a detailed and annotated discussion of the record. Based on that review, the Court granted Summary Judgment on some of the claims and against some of the *Glossip* plaintiffs, but found that the most of the *Glossip* plaintiffs were entitled to a trial.  In particular, the Court denied Summary Judgment on the "method of execution" claims asserted in Count II of the Third Amended Complaint.  The Court concluded that contested issues of fact were shown with respect to each of the prongs of the showing required to obtain relief described in the United States Supreme court, most recently described in *Bucklew v. Precythe*¸ 139 S.Ct. 1112, 1124 (2019).

25.     In particular, the Court concluded that factual issues existed as to whether the Protocol created a "substantial risk of pain" (Prong 1) and whether the plaintiffs had identified an alternative method of execution that was "feasible and readily implemented" (Prong 2). (*Id.* at 11-18.)

26.     The Court also concluded that the level of discretion afforded the warden in the Protocol in performing – among other things – the required consciousness test may exceed what the constitution would allow. As such, it appears from the Summary Judgment Order that if the amount of discretion exceeds what the constitution would allow, the Protocol would be invalid and unenforceable for that reason alone.

27.     Stouffer became aware of the August 11, 2021 Summary Judgment Order shortly after it was entered in *Glossip*.  He concluded that the Order meant his contentions that the Protocol was unconstitutional would not be dismissed on Summary Judgment, but would only be decided after a trial on the merits had concluded and a decision rendered.  (Stouffer Aff., ¶ 16.)

28.     Two weeks later, on August 25, 2021, nearly seven years after Stouffer was first assured that he would "receive the benefit of any ruling which might arguably benefit the named plaintiffs, whether at this or a later stage," six years after the Joint Stipulation and Order were filed promising that no execution dates would be set for the *Glossip* plaintiffs or any other condemned prisoner in Oklahoma, four years after the State announced to the Oklahoma Court of Criminal Appeals that based on the Joint Stipulation and Order it was not appropriate to schedule Stouffer's execution, and fifteen months after the Court announced the agreement by made by the State on March 11, 2020 that no execution dates would be set until *Glossip* was completed, and thirteen months after the Court described the agreement on the record on May 5, 2020, offering  "..to put it mildly" that it would be "immediately available" in the event the State reneged on the promise made by the Attorney General himself not to schedule execution dates, the State filed a Notice Pursuant to 22 0.5.2021. § 1001.1 (D) Regarding Execution Date, requesting that the Oklahoma Court of Criminal Appeals set an execution date for Stouffer (Laird Decl., Ex. 11; Stouffer Decl., ¶ 17.)

29.     As was the case with the March 6, 2017 Notice affirming its agreement as to Stouffer, the August 25, 2021 Notice applied only to Stouffer.  The State attached to

the notice as Exhibit 1 a copy of the Summary Judgment Order entered by the Court on August 25, 2021.  No other exhibits were attached to the notice. *Id.*

30.     In the August 25, 2021, Notice, the State first falsely claimed that it had prevailed in Stouffer's federal lawsuit challenging the execution protocol (presumably referring to the Courts August 11, 2021 Summary Judgment Order) but later in the notice acknowledged that "Stouffer was not part of the lawsuit in the Western District".  *Id.* at 1.

31.     Upon receipt of the August 25, 2021, Notice, Stouffer was shocked and dismayed to learn that the State intended to proceed with his execution when it had earlier promised not to do so. He believed that, if allowed to do so, he would be denied rights afforded to each and every individual currently on death row in Oklahoma, specifically the right to have his challenge to the current death penalty protocol considered and decided based on a well-developed evidentiary record and after the legal issues relating to the Protocol had been adequately briefed and decided by the Court after a trial (which was at that time and, to Stouffer's knowledge, is set to commence in February, 2022, two months **after** he is scheduled to be executed).  (Stouffer Aff., ¶19.)

32.     Five days later, on August 30, 2021, counsel for Stouffer filed an Objection to the Notice, contending that his constitutional objections had, in fact, not been resolved as claimed by the State, and that he was entitled to a trial on the merits of those claims prior to the time an execution date for him could be set. (Laird Decl., Ex. 12.)

33.     On August 31, 2021, the State filed a Reply to Stouffer's objections, describing it as "odd", legally insufficient, while acknowledging fact that Stouffer "had not been part of lawsuit",  referring to *Glossip*.  The State provided no explanation, and to

this date has never provided an explanation, as to why the August 11, 2021, Summary Judgment Order finding that a trial was required to resolve the objections to the protocol, could possibly authorize it to seek a date for Stouffer's execution. (Laird Decl., Ex. 13.)

34.     In none of the material submitted by the state in September, 2021, did the State address or bring to the attention of the Oklahoma Court of Criminal Appeals any of the facts relative to the *Glossip* case set forth in this Statement of Facts, other than the Courts August 11, 2021 Summary Judgment Order, nor did the State offer any explanation as to why the commitments made in *Glossip* no longer applied to Stouffer. Laird Decl., Exs. 11, 13-14.)

35.     On September 20, 2021, and based on the State's representations, the Oklahoma Court of Criminal Appeals entered an Order scheduling Stouffer's execution for December 9, 2021, 80 days later, with the inscrutable comment *"A seventh inmate (Stouffer) apparently has not joined that lethal injection challenge".*  (Laird Decl., Ex. 15.)

36.     On October 10, 2021, the *Glossip* plaintiffs who were dismissed by the Court's August 11, 2021, Summary Judgment Order filed a Motion for Injunctive Relief, requesting the Court to stay their execution dates established by the Oklahoma Court of Criminal Appeals.  Materials that addressed the request were filed in *Glossip* at Docket Numbers 506, 511, 520, 521, 523, 526, 526-1, 527, 528, 529, 530, and 532 and are attached as Exhibits 16 and 18-24 to the Laird Declaration.

37.     On October 12, 2021, and facing an execution date of December 9, 2021, and under exigent circumstances, Stouffer filed the present action, out of an abundance of

caution, and to ensure that his specific interests would be considered in the event they were not already protected by virtue of *Glossip*.

38.     On October 20, 2021, a telephonic status conference was convened to address how best to handle disposition of the October 10, 2021, Motion for Injunctive Relief.  A copy of the transcript of that conference is attached as Exhibit 17 to the Laird Declaration.

39.     During the October 20, 2021





40.

41.

(emphasis added) (page 11:5-8).

42. 

43.

44.     An evidentiary hearing on the October 20 Motion for Injunctive Relief proceeded on October 25, 2021.  At that hearing, the record made by Plaintiff's counsel was limited and, as noted by the Court at the time (later affirmed by the Tenth Circuit), fell short of what would be required to establish a likelihood of success on the merits required to warrant injunctive relief.  Specifically, the only evidence offered by Plaintiffs at the hearing was testimony from Attorney Spencer Hahn who had witnessed other executions involving protocols similar to the one in Oklahoma.  For its part, the State offered testimony from Dr. Joseph Antognini, who offered his expert opinion that the Oklahoma protocol would not result in a violation of the constitutional rights of the prisoners seeking injunctive relief.

45.     At the conclusion of the hearing, the Court denied injunctive relief but again reiterated its understanding of the commitment made earlier by the State:

> I'll first address the issue of the agreement that has been referred to both in the motion, and to some lesser degree, here in court.
>
> The argument **of these five plaintiffs** for a preliminary injunction on the basis of an agreement with the Attorney General of the State of Oklahoma is rejected.
>
> First, all of the claims that these five plaintiffs have asserted in this district court have been dismissed under Rule 12 or adjudicated by way of summary judgment under Rule 56.
>
> Then the Rule 59 motion for reconsideration was filed, briefed and denied. The case is complete in this Court as to these five plaintiffs.
>
> **To my great relief, in March of 2020, the Attorney General of Oklahoma acquiesced in my suggestion that none of the plaintiffs should be set for execution, as long as there was**

**anything for him to litigate in this Court.**

**Given the number of years that have elapsed since these plaintiffs stood trial and were convicted, that was no small concession by the Attorney General, taking into account the interest of the State in carrying out these sentences, after decades of litigation, as well as the interest of the surviving families and other victims.**

As to these five plaintiffs, there is nothing more to litigate in this Court.

In May of 2020, I effectively assured all of the plaintiffs that we would be back here quickly if the Attorney General went back on that understanding.

**<u>Because there is nothing more for these five plaintiffs to litigate in this Court</u>, the State of Oklahoma has not gone back on that understanding.**

Aside from that, in March and May of 2020, neither the Court nor the Attorney General had any indication that there would be a subset of the 32 plaintiffs who would, after being given more than one chance to designate an alternative method, would expressly decline to do so.

The plaintiffs in that subset effectively carved themselves out of Count II, which is the only count remaining to be tried as to the other 27 plaintiffs.

(Laird Decl., Ex. 8, pp. 139:23-141:10)(emphasis added).

46.     The State has made no effort to seek a ruling from this Court that its August 11, 2021, Summary Judgment dismissal of the six plaintiffs from *Glossip* was intended to and in fact constituted a final decision on the merits of Stouffer's constitutional claims which, as such, authorized the State to set an execution date for him.  (Laird Decl., ¶ 30.)

47.     Stouffer has now complied with the requirements imposed by the Court on the *Glossip* plaintiffs, *i.e.*, to affirmatively and irrevocably identify an alternative to the Oklahoma protocol, he has now done so.  Specifically, he has now elected the following execution alternatives: (1) firing squad; and (2) FDA approved pentobarbital or sodium thiopental, and has also agreed to accept the outcome of the *Glossip* action when that case has concluded, as if he were a named plaintiff in that action.  (Stouffer Aff., ¶ 19.)

48.     On October 27, 2021 the Tenth Circuit entered an Order staying the executions of two of the plaintiffs denied injunctive relief by the district court.  (Laird Decl., Ex. 26.) The Order found that this Court's dismissal of the non-designating plaintiffs to be an abuse of discretion.  It reached this conclusion based on the fact that the Summary Judgment Order entered on August 11, 2021 applied a different standard to the designating Plaintiffs in Stouffer than to those who the Court concluded failed to make a designation.  The Tenth Circuit concluded that the distinction made by the Court resulted in an improper disparate treatment of the dismissed plaintiffs.  The Tenth Circuit found that the dismissal of only some of the plaintiffs could not be reconciled with the Court's decision not to dismiss the other *Glossip* plaintiffs who had expressed the same reservations found by the Court to be dispositive in the case of the six plaintiffs who were dismissed.  In its October 27, 2021, ruling, the Tenth Circuit determined that the Court's disparate treatment, as described above, was an abuse of discretion. (Although the stay issued by the Tenth Circuit was lifted by an Order from the United States Supreme Court on October 28, 2021, no basis for lifting the stay was provided).

49.     Finally, the dismissed *Glossip* plaintiffs filed an emergency appeal of the Court's refusal to grant them the injunctive relief requested in the Motion filed on October 10, 2021, heard on October 25, 2021, and denied by the Court at the conclusion of the hearing.  In a decision entered on November 12, 2021, the Tenth Circuit denied those plaintiffs the stay they requested, but did so not by reconsidering and reversing the decision it had entered on October 27, 2021, but based on its conclusion that the limited evidentiary record made by those plaintiffs in support of the request for injunctive relief failed to show an entitlement to injunctive relief. Jones v. Crow, 2021 WL 5277462, at *6 (10th Cir. November 12, 2021).

## ARGUMENT

## I.     SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 allows a party to Move for Summary Judgment at any time, unless a different time or the court orders otherwise, until 30 days after the close of discovery.  The Motion must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A Motion for Summary Judgment is properly supported by citation to materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials.  If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the

case.  Under LRCv56.1, "All material facts set forth in the statement of material facts of the movant may be deemed admitted for the purpose of summary judgment unless specifically controverted by the nonmovant using the procedures set forth in this rule".

Material facts are those facts that might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "dispute about a material fact is 'genuine' when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* At the summary-judgment stage, the court's task "is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.' " *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson*, 477 U.S. at 249). And, "[i]n making that determination, a court must view the evidence 'in the light most favorable to the opposing party.' " *Id.* (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)).

## II.     STOUFFER IS ENTITLED TO PARTIAL SUMMARY JUDGMENT ON COUNT II OF HIS AMENDED COMPLAINT – EIGHTH AMENDMENT VIOLATION – CRUEL AND UNUSUAL PUNISHMENT.

In the August 11, 2021 Summary Judgment Order, the Court considered whether the allegations made by the Glossip plaintiffs, identical in all material respects to the claims made by Stouffer in Count II of his Amended Complaint, could be decided based on the summary judgment record in Glossip. As described in Paragraphs 23-26 of the

Statement of Undisputed Facts set forth above, this Court concluded that the non-dismissed Glossip plaintiffs were entitled to a trial on their allegations that the Protocol is unconstitutional.  In all material respects, those claims are identical to the claims found in Count II of Stouffer's Amended Complaint.  In the Summary Judgment Order, this court determined that contested issues of fact existed as to whether the Glossip plaintiffs could meet the two-prong standard governing method of execution challenges, and also whether the Protocol's method of ascertaining the prisoner's state of consciousness was adequate to satisfy the Supreme Court's requirements with respect to risk mitigation.

The Summary Judgment Order also addressed the sufficiency of the allegations made by the Glossip plaintiffs with the requirements set forth in the United States Supreme Court cases addressed to method of execution claims.  In the Summary Judgment Order, the Court concluded that in order to survive summary judgment, it was essential that a plaintiff affirmatively identify an alternative method of execution that would satisfy the requirements set forth by the United States Supreme Court.  As to that standard, the Court determined that the Glossip plaintiffs who had failed or refused to make such an affirmative declaration had failed to meet what was required, and as such granted the State's Motion for Summary Judgment as to those plaintiffs.  Based on the affidavit of Stouffer, concurrently submitted, he has adequately satisfied the requirements the Court, in Glossip, deemed necessary to survive Summary Judgment.  Specifically, Stouffer has elected the following execution alternatives: (1) firing squad; and (2) FDA approved pentobarbital or sodium thiopental, and has also agreed to accept the outcome

of the Glossip action when that case has concluded, as if he were a named plaintiff in that action.  (Stouffer Aff., ¶ 20.)

Finally, the Tenth Circuit has considered the Summary Judgment Order and, in particular, whether the Court's distinction between the Glossip plaintiffs who had affirmatively elected an alternative method of execution and those who had not was appropriate.  On October 27, 2021 the Tenth Circuit entered an Order staying the executions of two of the plaintiffs denied injunctive relief by the district court. See Order in Jones v. Crow, et al., No 21-639 (5:14-cv-00665-F Document 542 Filed 10/27/21 ("Stay Order").  (Laird Dec., Ex. 26.)  Although the Stay Order issued by the Tenth Circuit was lifted by an Order from the United States Supreme Court on October 28, 2021, no basis for the Supreme Court's Order was provided and, as such, the analysis of the Tenth Circuit remains the same and is binding on this Court.

The October 27, 2021, Stay Order concluded that this Court's dismissal of the non-designating plaintiffs to be an abuse of discretion.  (Stay Order at p. 6.) It reached this conclusion based on the fact that the Summary Judgment Order entered on August 11, 2021, applied a different standard to the designating Plaintiffs in Glossip than to those whom the Court concluded failed to make a designation.  The Tenth Circuit concluded that the distinction made by the Court resulted in an improper disparate treatment of the dismissed plaintiffs.  The Tenth Circuit found that the dismissal of only some of the plaintiffs could not be reconciled with the Court's decision not to dismiss the other Glossip plaintiffs who had expressed the same reservations found by the Court to be

dispositive in the case of the six plaintiffs who were dismissed.  In its October 27, 2021,

ruling, the Tenth Circuit determined that the Court's disparate treatment, as described

above, was an abuse of discretion. *Id.* at 6.

In conclusion, and based on the foregoing, Stouffer is entitled to entry of Partial

Summary Judgment finding that he is entitled to a trial on the Claims set forth in Count II

of his Amended Complaint.

## III     STOUFFER IS ENTITILED TO SUMMARY JUDGMENT ON COUNT III OF HIS AMENDED COMPLAINT – PROMISSORY ESTOPPEL / DETRIMENTAL RELIANCE.

The Oklahoma Supreme Court has adopted the principles of Restatement (Second)

of Contracts § 90 as part of the Oklahoma common law. *Russell v. Board of County*

*Commissioners*, 952 P.2d 492, 503 (OK 1997). In Russell, the court was asked to

consider whether statements in an employee handbook could be enforceable even if the

handbook was determined not to be enforceable as an express contract.  The Court

concluded that the statements could be enforced, either as an "implied contract" or based

on the principles of promissory estoppel set forth in Restatement (Second) of Contracts

§ 90.  As to promissory estoppel the Supreme Court, in Russell stated:

> Promissory estoppel, which is grounded in the Restatement (Second) of Contracts § 90, has been incorporated into Oklahoma common law. Section 90 of the Restatement states in part:
>
>> "(1) A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee **or a third person** and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires. * * *"
>
> The elements necessary to establish promissory estoppel are: (1) a clear

and unambiguous promise, (2) foreseeability by the promisor that the promisee would rely upon it, (3) reasonable reliance upon the promise to the promisee's detriment and (4) **hardship or unfairness can be avoided only by the promise's enforcement**.

(Id. at 503) (Emphasis Added)

In *Russell*, the Court also noted that "A promise is defined in Restatement (Second) of Contracts § 2, as: " * * * a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made."

Next, silence in the part if a promiser may under the circumstances here establish that the State either ratified or is estopped from denying the promise made.  That is based on the failure of the State to object or otherwise comment after the Court recited the promise made by the State during the the the May 5, 2020 hearing. *See G.E. Capital Information Tech. Solutions, Inc. v. Oklahoma City Public Schools*, 173 P.3d 114, 118 (OK. App. 2007). Similarly, Defendants' silence and failure to contest the agreement encompassing Stouffer reinforces the estoppel. *Manokoune v. State Farm Mut. Auto Ins. Co.*, 145 P.3d 1081, 1087 n. 4 (OK 2006) ("At a minimum, the facts alleged by Plaintiff support consideration of the theory of 'estoppel by silence,' where 'the one who is estopped has in effect stood by and, in violation of his duty in equity and good conscience to warn another of the real facts, has permitted the other to take some action detrimental to that other's interest, [remaining] silent on some occasion when he should have spoken.").  That the promise was made in the presence of the Court likely makes it a "judicial admission" enforceable in the event it is later renounced or otherwise breached.

*See Gibson v. Arnold*, 288 F.3d 1242, 1246-1246 (10th Cir. 2002). Finally, in addition, and to the extent the State contends that the promise it made was not made directly to Stouffer, he clearly was a member of the class of persons for whose benefit the agreement was intended to benefit, and is therefore able to enforce the agreement as an intended third party beneficiary with the right to have it enforced on his behalf. *Oil Capital Racing Association v. Tulsa Speedway, Inc.*, 628 P.2d 1176, 1179 (OK CIV APP 1981).

The undisputed facts set forth in this Motion establish all of the elements required to establish an estoppel under Oklahoma law:

> (1) The clear and unambiguous promise directly to him or a third party that the State would not set his execution date until the Glossip case had been completed:

> (2) That it was foreseeable by the State that its promise would be relied on by Stouffer:

> (3) That Stouffer relied reasonable and to his detriment on the promise made by the State and:

> (4) Stouffer would suffer hardship or it would be unfair to him not to enforce the promise made to him by the State

Based on the enumerated and uncontested facts set forth above, and applying the well-established legal principles governing promissory estoppel in the State of Oklahoma, Stouffer is entitled to Summary Judgment on Count III of his Amended Complaint.

## IV.    REQUEST FOR EXPEDITED CONSIDERATION AND RELIEF.

Given the currently scheduled execution date of December 9, 2021, adhering to the normal deadlines governing Motions for Summary Judgment would render this motion

and the relief requested moot before the merits would be addressed.  Under the circumstances, Stouffer requests the Court to set a briefing schedule and hearing – if deemed necessary – on an expedited basis.

Wherefore, and based on the foregoing, Stouffer requests the Court grant him partial summary judgment as requested in this Motion, and for any and all other relief the Court deems just, equitable, and appropriate under the circumstances.

Dated:        November 19, 2021  Respectfully submitted,

*s/ Gregory W. Laird*
Gregory W. Laird, OBA # 18093
Law Office of Gregory W. Laird
P.O. Box 52043
Tulsa, OK 74152
greglairdlaw@gmail.com
(405) 264-3553

COUNSEL FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of November, 2021, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of Notice of Electronic Filing to all counsel of record who are registered participants of the Electronic Case Filing system.

*s/ Gregory W. Laird*
Gregory W. Laird